Heffron, Admrx., Appellant, *v.* Prudential
Insurance Company of America.

Argued April 28, 1939.

Before Keller, P. J.,
Cunningham, Baldrige, Stadtfeld, Parker, Rhodes
and Hirt, JJ.

*Raymond T. Law,* for appellant.

*A. F. Vosburg,* with him *A. A. Vosburg,* of *Vosburg & Vosburg,* for appellee.

OPINION BY KELLER, P. J., September 27, 1939:

Peter Kaub held five life insurance policies issued by the defendant, aggregating $1077, all payable to his executors or administrators. Each of the policies contained a clause agreeing that upon proof being furnished the company that the insured had "sustained bodily injury, solely through external, violent and accidental means......resulting in the death of the insured within ninety days from the date of such bodily injury......the company will pay in addition to any other sums due under the policy......an accidental death benefit equal to the face amount of insurance stated in the policy......except......no accidental death benefit will be paid if the death of the insured resulted from suicide."

The insured was drowned in the Lackawanna River near Duryea, Pa., on April 9, 1937. The plaintiff contended that the death was accidental and claimed the accidental death benefit in addition to the face of the policies. The company paid the face amount of the insurance but refused to pay the accidental death benefits, contending that the insured's death was not

accidental but "resulted from suicide." This action followed.

On the trial, *"for the purpose of proving the death of Peter Kaub by accidental drowning,"* the plaintiff offered in evidence a certified copy of the certificate of death of the insured certified under the signature of the Director of the Bureau of Vital Statistics, Pennsylvania Department of Health, with the official seal of the department attached, wherein, as part of the 'Medical Certificate of Death', signed by the deputy coroner, Joseph G. Dills, M. D., the following appeared—the words italicised being inserted in the printed form:

"21. Date of Death (month, day and year) *April 9, 1937*

"22. I Hereby Certify, That I attended deceased from *April 9, 1937* to *April 9, 1937*.

"I last saw him *dead on April 9, 1937, death is said to have occurred on the date stated above, at 11 A. M.*

"The principal cause of death and related causes of importance were as follows:

*Drowning*
*Accidental*

*No boat Involved*

"23. If death was due to external causes (violence) fill in also the following:

Accident, suicide or homicide? *Accident"*

This was objected to by the defendant's counsel on the grounds (1) that it was hearsay; (2) that it called for a conclusion on the part of a witness, not present for cross-examination as to his qualifications; (3) that it was not the best evidence; and (4) that section 21 of the Act of June 7, 1915, P. L. 900, as amended by Acts of May 24, 1933, P. L. 976, and April 22, 1937, P. L. 399, 35 PS sec. 471, providing for the registration of deaths, etc., was unconstitutional in so far as it makes the certificate prima facie evidence of the *cause* of death. The objec-

tion was overruled and the certificate was received in evidence. The jury returned a verdict for the plaintiff.

Following a motion by defendant for judgment in its favor non obstante veredicto and argument on the rule granted, the court came to the conclusion that it had erred in admitting in evidence the certified copy of the death certificate for the purpose of proving the death of the insured by *accidental* drowning, and, with that eliminated, that the plaintiff had failed to prove by sufficient competent evidence the accidental character of insured's death, and entered judgment for the defendant non obstante veredicto. The plaintiff appealed.

The court's action in entering judgment for the defendant notwithstanding the verdict was clearly wrong under the decisions. With the certificate of death in evidence as proof of the accidental character of the insured's death, there was evidence in the case to support a verdict for the plaintiff. If error was made in receiving the certificate in evidence for the purpose for which it was offered, the remedy was to grant a new trial, not to enter judgment for the defendant on the record with this evidence excluded. This is definitely established by many decisions, among which are the following recent cases: *Ozanich v. Metropolitan Life Ins. Co.,* 119 Pa. Superior Ct. 52, 55, 180 A. 67; *Ellsworth v. Husband,* 119 Pa. Superior Ct. 245, 254, 181 A. 90; *Mincy v. Washington Nat. L. Ins. Co.,* 130 Pa. Superior Ct. 285, 295, 196 A. 893; *Huffman v. Simmons,* 131 Pa. Superior Ct. 370, 374, 200 A. 274. The record *at the close of the trial,* without any correction of errors in the admission or exclusion of evidence, determines the right of the court to enter judgment non obstante veredicto under the Act of April 22, 1905, P. L. 286; *Dalmas v. Kemble,* 215 Pa. 410, 64 A. 559; *Hosteter v. Kniseley,* 322 Pa. 248, 249, 250, 185 A. 300.

The learned court below, in its opinion, referred to this principle but nevertheless disregarded it by enter-

ing judgment for the defendant instead of granting a new trial. This would require a reversal of the judgment.

Had the certificate been excluded, the plaintiff would have produced evidence of circumstances tending to prove the accidental character of the drowning and disprove suicide (see *Wainstein v. Equitable L. Assurance Society*, 318 Pa. 428, 431, 178 A. 502, overruling the fourth, fifth, sixth and seventh assignments) for in rebuttal she offered proof of circumstances tending to disprove suicide, and they were excluded because the plaintiff had rested after making out a prima facie case of accidental death by the certificate of death and "having elected to rest her case in chief upon those grounds, cannot now be permitted to appear before the court with an offer of proof which at best cannot be but elements of proof which she was bound to produce as part of her case in chief. Exception to plaintiff" (76a). See similar ruling p. 89a.

As, in our opinion, the certificate should not have been received in evidence for the purpose for which it was offered we cannot enter judgment for the plaintiff on the verdict.

We are not required in this case to decide whether the provision in section 21 of the Act of June 7, 1915, P. L. 900, that "any such copy of the record of a ...... death......when properly certified by the State Registrar to be a true copy thereof, shall be *prima facie* evidence in all courts and places of *the facts therein stated*" is unconstitutional as respects the statements in the *medical certificate* relative to the *cause or causes* of death, as distinguished from the fact of death, by reason of the fact that the title of the act gives no notice of any intention to change the rules of evidence and admit evidence that would otherwise be inadmissible as hearsay, (see *Borgon v. John Hancock Mutual Life Ins. Co.,* 99 Pa. Superior Ct. 377, 384; *Spector v. Northwestern F. & M. Ins. Co.,* 285 Pa. 464, 471, 132 A.

531; *Phillips' Est.*, 295 Pa. 349, 145 A. 437; *Potter County Water Co. v. Austin Boro.*, 206 Pa. 297, 55 A. 991; *Strain v. Kern*, 277 Pa. 209, 120 A. 818); for by the express provisions of section 7 of the act, details as to the causes, (primary and contributory) of the death were to be filled in the certificate of death by the *physician last in attendance on the deceased*, who would have full and exact knowledge of them. Furthermore, they are confined to natural deaths—that is, death by disease. In the present case, there was no attending physician. Dr. Dills never "attended" him.

Section 8 of the Act provides what shall be done respecting the certificate of death, necessary for a burial permit, in case of a death occurring without medical attendance, and all that is required in such circumstances is a statement of the *nature of the disease* or the *manner of death;* and where death results from external causes or violence, the attending physician or the coroner is instructed to state only whether the death was *probably* accidental, suicidal or homicidal, which is not the statement of a *fact* but merely the expression of an opinion as to probabilities, not receivable in evidence as a fact.

A careful reading of the entire act discloses to us no intention on the part of the legislature to make unsworn statements in a death certificate as respects the cause or causes of death, competent evidence on a trial in court, where the person making them, by reason of want of personal knowledge, would have been incompetent to testify at the trial if called as a witness.

Dr. Dills had no personal knowledge whatever of the circumstances attending Peter Kaub's death. His knowledge was confined to the fact that Kaub had died by drowning, which was not disputed. On the question whether his death was accidental or suicidal Dr. Dills was not competent to give evidence either as a witness in court or by signing a death certificate. See *Lederer*

*v. Metropolitan Life Ins. Co.,* 135 Pa. Superior Ct. 61, 4 A. 2d 608.

The difficulty was, no doubt, due to the error of the Department of Health in preparing the form of certificate. Had the form prescribed by the Act been followed, and the inquiry been worded, "23. If death was due to external causes or violence was it *probably* accidental, suicidal or homicidal?", no reasonable person would have considered the answer to be the *statement of a fact,* admissible in evidence as such in court.

The second assignment of error is sustained. The judgment is reversed and a new trial awarded.