417 A.2d 1206

**PITTSBURGH NATIONAL BANK, Trustee under a Life Insurance Trust Agreement for Wife and Children, Appellant,**

v.

**The MUTUAL LIFE INSURANCE COMPANY OF NEW YORK.**

Superior Court of Pennsylvania.

Argued April 9, 1979.

Filed Jan. 4, 1980.

Reargument Denied April 11, 1980.

John M. Silvestri, Pittsburgh, for appellant.

James A. Mollica, Jr., Pittsburgh, for appellee.

Before CERCONE, President Judge, and WIEAND and HOFFMAN, JJ.

WIEAND, Judge:

On October 12, 1972, the body of Dr. Carmen A. DeChesaro was found hanging from the passenger side of his Mercedes-Benz automobile. The safety belt from the passenger seat had been looped twice around his neck. He was dead of strangulation. DeChesaro's life insurance carrier, Mutual Life Insurance Company of New York, refused to pay the accidental death benefits provided by three separate policies of insurance, contending the doctor had committed suicide. An action was brought by Pittsburgh National Bank, trustee, to recover such benefits.

Evidence produced during eleven days of trial disclosed that sometime after 4:30 o'clock, A.M., on October 12, 1972 decedent's car left a two-lane road in Allegheny County, went over an embankment and came to rest approximately seventy-five feet from the roadway. No tire marks were evident on the surface of the road. Examination of the

vehicle revealed that the lights had been turned off, the gearshift was in "park" and there was no interior damage. The only significant exterior damage apparent was on the hood and left front fender; and the glass of the side window adjacent to the passenger's seat was shattered. In other respects, the vehicle was intact. A subsequent examination disclosed no mechanical failures.

The body of the decedent contained no evidence of injury except a small cut on the upper lip and a deep furrow on the back of the neck. The latter was consistent with strangulation caused by the belt found wrapped around his neck. Expert witnesses disagreed about whether death was accidental or self-inflicted. Plaintiff's experts opined that impact had caused the decedent to be propelled across the front seat of the car and through the side window. They testified that during this process his head had became entangled in the non-retractable, lap-shoulder safety belt. Defendant's experts, including the pathologist who performed the autopsy, were of the opinion that the decedent had committed suicide. In support of their opinions, they cited a small size of the window, the compact dimensions of the vehicle's interior, the absence of injury to the decedent, and the double loop of the safety belt. Defendant also showed that the decedent and his wife had had a history of marital difficulties and that a violent argument had taken place a few hours before death occurred. The doctor had struck his wife, then fled from his home, leaving his wife bleeding profusely from the head wound which he had inflicted.

The jury credited the suicide theory and found in favor of the defendant insurer.

On October 13, 1976, six days after trial, plaintiff's counsel filed an affidavit alleging juror misconduct and quoting from an article appearing in the Pittsburgh Press which recited that one of the jurors had made his own inspection of a Mercedes-Benz automobile similar to that of the decedent. The trial judge refused to summon and interrogate the juror referred to in the news story.

Plaintiff's motion for new trial again raised the issue of juror misconduct. It also asserted as grounds for new trial (1) an evidentiary ruling refusing to receive the death certificate for the purpose of showing that death had been accidental; and (2) allegedly improper remarks of defense counsel during closing argument. The motion for new trial was denied, judgment was entered on the verdict, and this appeal followed.

■ The first issue which appellant attempts to argue in this Court pertains to an allegedly improper communication between the trial judge and the jury, made during deliberations and outside the presence of counsel. This issue was not included in the original or any amended motion for new trial and was not briefed or argued before the lower court. Appellant contends that trial counsel did not become aware of the problem until after the motion for new trial had been filed.[1] If this be so, appellant nevertheless fails to offer an explanation for the failure to raise this issue in either an amended or supplemental motion for new trial after counsel had become aware of the issue. In fact, the original motion for new trial contained the usual reservation of right to raise additional contentions of error. Where an issue is not raised in the trial court, that issue has not been preserved for appellate review. *Benson v. Penn Central Transportation Co.*, 463 Pa. 37, 342 A.2d 393 (1975); *Dixon v. Andrew Tile and Manufacturing Corp.*, 238 Pa.Super. 275, 357 A.2d 667 (1976).

The first issue properly before this Court concerns the alleged misconduct of the juror who visited a Mercedes-Benz dealership and inspected a model similar to the DeChesaro vehicle. The juror was quoted in the newspaper article as having determined that the space between the driver's seat and the steering wheel was too small to allow the driver to be flung from his seat. Appellant argues that this misconduct related to a material fact, could have improperly influ-

1. The post trial proceedings were handled by appellant's trial counsel, Len J. Paletta, now deceased. New counsel, John M. Silvestri, has pursued this appeal.

enced the remaining jurors in their deliberations, and requires the award of a new trial.

Appellant's attempt to impeach the jury's verdict is similar to that made in *Friedman v. Ralph Brothers, Inc.*, 314 Pa. 247, 171 A. 900 (1934). There, the jury foreman had made an unauthorized visit to the scene of an accident, took some measurements, and communicated this information to the jury. Although criticizing this improper activity, the Supreme Court held that jurors could not impeach their own verdict. At 314 Pa. page 249, 171 A. at 901, the Court said, ". . . we cannot accept the statement of jurors as to what transpired in the jury room as to the propriety or impropriety of a juror's conduct. . . . Only in clear cases of improper conduct by jurors, evidenced by competent testimony, should a verdict, which is fully supported by the evidence, be set aside and a new trial granted." The Court observed further that the conduct of the juror could not have influenced the jury improperly because all the information related by the juror had been received in evidence.

This decision is controlling of the issue in the instant case. Here, appellant attempted to impeach the verdict by the affidavit of one of the jurors (not the offending juror) and a copy of a newspaper article. This was not competent to impeach the verdict. See: *Rice v. Bauer*, 359 Pa. 544, 548, 59 A.2d 885, 887 (1948); *Commonwealth v. Filer*, 249 Pa. 171, 94 A.2d 822 (1915). Moreover, the observation allegedly made by the offending juror did not add to the distances and dimensions established by evidence properly received and considered by the jury. This reason for new trial, therefore, must fail.

Appellant contends that the trial court erred in refusing to admit into evidence the official death certificate. This certificate, issued by the Coroner's Office of Allegheny County, described the time, place, and other circumstances of Dr. DeChesaro's death. It also contained a notation that the manner of death, given a choice of accident, suicide, or homicide, was accident. The trial judge ruled, following in

camera proceedings, that the document would be received for limited purposes, but not as substantive evidence to establish that death had been accidental. This ruling was not erroneous.

■ Although the Vital Statistics Law, Act of June 29, 1953, P.L. 304, art. VIII, § 810, 35 P.S. § 450.810, and its predecessors, provide that a death certificate "shall constitute prima facie evidence of its contents", courts have recognized that certain information recited on the certificate is hearsay. Therefore, the contents of the certificate are admissible only insofar as they would be admissible if the official preparing the same had been called as a witness. *Kubacki v. Metropolitan Life Insurance Co.*, 193 Pa.Super. 138, 164 A.2d 48 (1960); *Heffron v. Prudential Insurance Co.*, 137 Pa.Super. 69, 8 A.2d 491 (1939). In *Heffron*, the attesting doctor had no personal knowledge of the circumstances of the death, i. e. whether it was accidental or suicidal; and therefore, it was held that the certificate should have been excluded. The court concluded that in spite of the language "prima facie evidence", the statute did not authorize the admission of evidence which would otherwise be hearsay and inadmissible opinion. See also: *Meyers v. Metropolitan Insurance Co.*, 36 D. & C.2d 479 (1964), which held that the statute makes the certificate admissible only insofar as it conforms to established rules of admissibility.

■ The attesting doctor in the instant case was not the pathologist who actually performed the autopsy, but rather the Coroner of Allegheny County, Dr. Cyril Wecht, who had no personal knowledge of the circumstances of the death. Moreover, the information concerning the accidental nature of death was produced by appellant through numerous medical and other expert witnesses who gave their opinions regarding the manner of death. Among these witnesses was Dr. Wecht, the Coroner. If the trial court's ruling had been erroneous, therefore, the error would have been harmless and would not require a new trial. In *Kubacki v. Metropoli-*

*tan Life Insurance Co.*, supra 193 Pa.Super. at 149, 164 A.2d at 53, this Court said:

> "We perceive no substantial error or injustice which resulted from the exclusion of the death certificate under the circumstances of the instant case. Appellant undertook to prove the cause of death by medical testimony, and by the autopsy report which was admitted as Defendant's Exhibit 2. As pointed out by the court below, the death certificate was merely a repetitious summary of this lengthy evidence."

The final argument made by appellant is that improper, prejudicial remarks were made by appellee's counsel during his closing address. "Whether a lawyer's argument to the jury transgresses the bounds of legitimate advocacy is primarily for the discretion of the trial judge, and we will not interfere with his exercise of discretion in connection therewith, unless the record manifests a clear abuse of discretion." *Leasure v. Heller*, 436 Pa. 108, 113–114, 258 A.2d 855, 858 (1969).

In the instant case, the remarks complained of were well within the limits of advocacy. Possible bias on the part of a witness is properly to be considered by a jury in determining credibility, and it is not improper for counsel to comment thereon. See: *Downey v. Weston*, 451 Pa. 259, 301 A.2d 635 (1973). The closing arguments of both sides summed up close to four years of preparation and eleven days of trial. As is to be expected in strenuously litigated matters, the summations of both sides were extensive and vigorous. Moreover, the trial court gave cautionary instructions concerning the alleged improper remarks challenging the suggested bias of the witness. There was no abuse of discretion in denying a new trial.

Judgments affirmed.

HOFFMAN, J., concurs in the result.