## Cooley v. Little

*Eric Wiener,* for plaintiff.
*John Havas,* for Little, Beck and Community Medical Assoc., P.C.
*C. Kent Price,* for Ligado, Doughtry and Polyclinic Medical Center.

TURGEON, *J.,* December 10, 1992—On June 10, 1992, following a six-day jury trial in the above-captioned medical malpractice action, a 10-2 jury verdict was returned in favor of defendants Robert G. Little, M.D. and Community Medical Associates, P.C. and against defendant Polyclinic Medical Center in the amount of $100,000.

On June 11, 1992, juror no. 2, who voted against the verdict, composed a letter to this court outlining her complaints with the jury's deliberations and verdict. In her letter she stated: "As I understood your instructions to the jury, we were to use our experiences and common sense in our deliberations and decision—in my case this involved some research, copies of which I had in my hand but was not allowed to submit for consideration until late in the day when the verdict had already been reached." Later in her letter the juror stated that "[M]y input was received but I still had no opportunity to have copies of my 'research' accepted for consideration." The

letter also contained complaints about her treatment, including what she perceived as misogyny and ageism by the other jurors.

The plaintiff has filed post-verdict motions including motions for a new trial or for judgment non obstante veredicto based in part on the statements made by the juror in her letter regarding her possession of materials not properly admitted into evidence and her statements that she was prevented from participating in the jury process. The plaintiffs argue that this juror is competent to testify as to the existence of extraneous influences during jury deliberations which, plaintiffs assert, ultimately prejudiced the jury. The defendants argue that any issues raised in the juror's letter do not require any further development of the evidentiary record noting in particular that there is a strong condemnation in Pennsylvania regarding the interviewing of discharged jurors as to what transpired in the jury room.

The law in Pennsylvania is clear that a juror may not give post-trial evidence which impeaches the jury's verdict; what occurs among jurors in a jury room is inadmissible for such purposes. *Pittsburgh National Bank v. The Mutual Life Insurance Co. of New York*, 493 Pa. 96, 100-01, 425 A.2d 383, 385-86 (1982). This policy was enunciated by our state Supreme Court as follows:

"Pennsylvania follows the majority rule in providing an evidentiary prohibition against the admissibility of testimony of a discharged juror as to what occurred among the jurors in the jury room. *Commonwealth v. Sero*, 478 Pa. 440, 387 A.2d 63 (1978); *Commonwealth v. Pierce*, 453 Pa. 319, 309 A.2d 371 (1983); *Commonwealth v. Zlatovich*, 440 Pa. 388, 269 A.2d 469 (1970); *Commonwealth v. Patrick*, 416 Pa. 437, 206 A.2d 295 (1965); *Friedman v. Ralph Bros. Inc.*, 314 Pa. 247, 171 A. 900 (1934); *Commonwealth v. Filer*, 249 Pa. 171, 94 A. 822

(1915); *Smalley v. Morris,* 157 Pa. 349, 27 A. 734 (1893); *Cluggage v. Swan,* 4 Binney 150 (1811). Sound policy reasons, set forth explicitly in *Friedman v. Ralph Bros. Inc., supra,* for this rule to keep jury deliberations inviolate need not be reiterated. But it is important for clarity to emphasize that the prohibition is directed to the subject matter of the testimony in question and its possible effect upon the verdict, rather than to the fact that the person sought to testify possesses the status of a discharged juror.

"The more recent case of *Commonwealth v. Zlatovich,* 440 Pa. 388, 394-97, 269 A.2d 469, 472-73 (1970) discussed the Pennsylvania position regarding the testimony of discharged jurors and summarized:

"'[W]hile we permit discharged jurors to testify as to the existence of outside influences during their deliberation, nevertheless, we prohibit them from testifying as to the *effect* which these extra-evidentiary influences had upon the jurors in reaching a decision....' (emphasis in original) 440 Pa. at 369, 269 A.2d at 473." *Pittsburgh National Bank, supra.*

It is, therefore, clear that juror no. 2's complaint about how she was treated by other jurors is completely prohibited from consideration by this court; however, extraneous evidence not adduced at trial which is considered by a jury during deliberations may be the subject of post-trial proceedings for the purpose of determining the existence of such outside influences. Juror no. 2 has stated that she improperly presented outside influences for the jury's consideration. We believe, therefore, the juror must be questioned under oath what "research" she in fact presented to the jury. Furthermore, although she stated the jury did not receive actual copies of her research until after the verdict was rendered, she nevertheless has intimated that she communicated her findings to the jury and this issue must be explored under oath.

The defendants assert that inappropriate behavior by a juror cannot be the subject of post-verdict questioning unless the evidence shows prejudicial *effect* on the jury from the outside influences. Defendants claim that, in this case, not only did the other jurors refuse to accept juror no. 2's outside "research" but the fact that she voted against the verdict also reveals no prejudicial effect on the ultimate verdict. The defendants argue that this situation is akin to that presented in *Pittsburgh National Bank.* There, our state Supreme Court refused to permit the appellants' post-trial questioning of a juror who, during jury deliberations, had visited a car dealership and examined an automobile similar to the vehicle driven by the decedent at the time of a fatal crash at issue and who had presented his findings to the jury. The court concluded that even though the juror had acted improperly, he would not be subject to post-trial questioning. The court relied on *Friedman v. Ralph Bros. Inc., supra,* where a jury foreman made an unauthorized visit to the scene of an accident, took some measurements and informed the jury of his findings even though that information had already been presented as evidence. *Pittsburgh National Bank, supra.* The court in *Friedman* held testimony regarding the juror's extra-judicial foray was inadmissible. *Id.*

We conclude that this situation is dissimilar from that presented in *Pittsburgh National Bank* and *Friedman v. Ralph Bros. Inc.* in that we have not yet been apprised of the nature of the juror's "research." Until such time as this court knows the existence and nature of the juror's "research" and whether or not it was presented to the jury during deliberations, we cannot determine whether there was a prejudicial effect upon the jury. Therefore, a final decision on plaintiffs' post-verdict motions cannot be made at this time.

Accordingly, we enter the following

## ORDER

And now, December 10, 1992, upon agreement of a convenient date, counsel shall have the opportunity to obtain juror no. 2's testimony in the presence of this court. The interrogation of said juror shall be limited to:

(1) The nature of the "research" she compiled;

(2) Whether any of this "research" was presented to the jury;

(3) The nature of the "input" which she communicated to her fellow jurors; and

(4) At what point during the jury's deliberations was juror no. 2's "research" and/or "input" received.

The questions posed to juror no. 2 shall not include any reference to what occurred among the jurors in the jury room.