**Wiesen v. Fred Hill & Sons Inc.**

*Michael Flanagan,* for plaintiff.
*Barbara Pennell,* for defendants.

GOLDMAN, *J.,* November 6, 1995—

## I.

On July 11, 1989, plaintiff Paul Wiesen was moving a vending machine on a hand truck from a warehouse onto a motor vehicle. The hand truck was designed and manufactured by defendant Stevens Appliance Truck Company, and distributed by defendant Fred Hill and Sons Incorporated. It had two main wheels, over which the vending machine balanced, and two smaller wheels ("second set of wheels") which could be extended by the operator to assist in supporting the load. On the day of the accident, prior to moving the load, Wiesen extended the second set of wheels. As Wiesen walked backward across the warehouse floor, he pulled the vending machine on the hand truck. Wiesen experienced difficulty pulling the machine across a shallow lip in the floor and shortly thereafter was injured when the second set of wheels retracted and the vending machine fell over, pinning him underneath. He allegedly tore ligaments and menisci in his right knee. Wiesen investigated the accident scene on June 27, 1991, and photographed a hand truck of the same make and model

as the hand truck involved in the accident. He could not locate, and no one ever located, the actual hand truck involved in the accident, apparently through no fault of any party.

On July 11, 1991, Wiesen instituted this products liability action alleging that the hand truck was defectively designed. He sought compensation for his injuries as well as wage loss damages. A jury trial was held from April 11, 1995 to April 13, 1995. The jury returned a verdict in favor of defendants, finding that the hand truck was not defectively designed.

Wiesen filed a timely post-trial motion requesting a new trial. He contends (1) the jury verdict is contrary to the court's charge; (2) the jury was influenced by extraneous matter; (3) the court's charge concerning the unavailable hand truck confused the jury; (4) the court erred by precluding Wiesen's counsel from asking venirepersons whether the unavailability of the actual hand truck would influence their verdict; (5) the court erred in providing the jury with photographic exhibits of the exemplar hand truck; (6) the court erred in allowing defendants' expert to testify regarding hand truck operation, and in allowing defendants' expert to answer an improper hypothetical question and (7) the court erred in allowing defendants to cross-examine Wiesen's treating physician regarding written reports of physical therapists.

## II.

Preliminarily, it should be noted that it is in the trial court's sound discretion whether to grant a new trial. *Dougherty v. McLaughlin,* 432 Pa. Super. 129, 133,

637 A.2d 1017, 1019 (1994). In Pennsylvania, "[a] trial court may only grant a new trial when the jury's verdict is so contrary to the evidence that it 'shocks one's sense of justice.' " *Neison v. Hines,* 539 Pa. 516, 520, 653 A.2d 634, 636 (1995) (quoting *Kiser v. Schulte,* 548 Pa. 219, 226, 648 A.2d. 1, 4 (1994)). In addition, a new trial is proper when the court committed an error of law which affected the outcome of the case. *Pollock Industries Inc. v. General Steel Castings Corp.,* 203 Pa. Super. 453, 201 A.2d 606 (1964). In light of these standards, plaintiff is not entitled to a new trial.

## A.

Plaintiff Paul Wiesen's products liability action is premised on the argument that the hand truck lacked an inexpensive lock that would have prevented the hand truck's second set of wheels from retracting from their extended position. Wiesen argues that this lock, if present, would have prevented his accident because the second set of wheels would not have retracted unexpectedly after he pulled the hand truck over the shallow lip in the warehouse floor. In support of his case Wiesen testified that he pulled the loaded hand truck while another warehouse employee, William Miller, pushed. Wiesen pulled the hand truck over the shallow lip in the floor, which measured approximately one quarter inch to one half inch deep. He tilted the hand truck slightly, to raise the second set of wheels off the floor, in order to pull them over the shallow lip. He then noticed the second set of wheels swinging into the retracted position as he pulled the truck over the shallow lip, and the loaded hand truck collapsed on top of him.

On June 27, 1991, Wiesen investigated the accident scene with his engineering expert, Kenneth Taber. Taber could not locate the hand truck Wiesen used when he had his accident, and a warehouse representative stated that it was no longer available. Taber located and photographed a hand truck which Wiesen told him was similar or identical to the actual hand truck. Wiesen testified that the photographs showed a similar hand truck. The photographs were marked as plaintiff's exhibits one through five, and Taber testified that the exhibits represented an exemplar hand truck that was identical to the hand truck used by Wiesen. On the basis of his investigation, Taber formed the opinion that Wiesen's accident could have been prevented if defendant Stevens installed an inexpensive lock to keep the second set of wheels in the extended position.

Defendants contested Taber's opinion, and presented their own expert, Wesley Byrd, the designer of the hand truck, who testified that the hand truck used by Wiesen, as manufactured, possessed a locking device to hold the second set of wheels in the extended position. Moreover, Taber testified on cross-examination that the exemplar hand truck in Wiesen's photographic exhibits had been damaged or abused and was probably in active service at the time the photographs were taken. Taber testified that the damage to the exemplar hand truck rendered it unsafe for its intended use.

In addition, defendants contested Wiesen's account of the accident. Defendants presented the warehouse worker, William Miller, who assisted Wiesen with the hand truck before the accident. Miller testified that he saw Wiesen pull a lever on the hand truck, that on

some models of the truck, released the second set of wheels from their extended and locked position. Miller testified that Wiesen pulled the lever in an attempt to release the second set of wheels from the shallow lip in the floor, in which the wheels were stuck. Wiesen disputed that the lever actually released the second set of wheels, and disputed Miller's ability to see Wiesen's motions just before the accident.

The jury received conflicting testimony on the alleged design defect and causation. It could have found for defendants on a number of theories: (1) that the hand truck had a lock and was not defectively designed; or (2) that Wiesen released the second set of wheels; or (3) that the hand truck was damaged and the damage caused a malfunction, causing the accident. Seven out of the eight jurors answered the interrogatory, "Was the appliance truck defectively designed by Stevens Appliance Truck Company?" in the negative. (N.T. 390.)

The jury is privileged to assess the evidence presented and to weigh the credibility of witnesses. *Dawson v. Fowler,* 384 Pa. Super. 329, 333, 558 A.2d 565, 567 (1989), *allocatur denied,* 523 Pa. 636, 565 A.2d 445 (1989). It may also weigh the credibility of expert witnesses. *Appeal of Avco Corp.,* 100 Pa. Commw. 616, 621, 515 A.2d 335, 338 (1986). The jury in the present case acted within its proper scope in deciding this case as it did, given the evidence presented. Since the evidence would permit a reasonable jury to decide for defendants, this verdict is not so contrary to the evidence as to shock the court's sense of justice. See *Neison v. Hines, supra* at 520, 653 A.2d at 636 (standard for grant of a new trial).

## B.

Plaintiff Paul Wiesen also argues that the jury verdict is contrary to the court's charge. He contends that the jury disregarded testimony and referred to plaintiff's photographic exhibits of an exemplar hand truck as if they showed the hand truck involved in the accident. Plaintiff argues that this is contrary to the court's charge to the jury to decide the case based on the testimony they heard and the law as the court stated it. Plaintiff next argues that the jury reached their verdict under extraneous influences. Plaintiff's two arguments are related, because the alleged extraneous influence, it is contended, caused the verdict to be contrary to the jury charge. These two arguments will be treated together. Plaintiff's arguments fail.

Plaintiff bases both arguments on a letter received from juror no. six, after the verdict was recorded. At post-trial oral argument, plaintiff introduced the letter as a post-trial exhibit and both parties stipulated to its authenticity. In this letter, juror no. six stated:

"After reflecting on the outcome of the case completed, yesterday, I felt the need to explain the details of deliberation because, actually, you won the battle and lost the war.

"The initial poll resulted in a five to three vote in your favor. I was among the three dissenters. I was as adamant as juror four, and did not expect to change my vote. I do not, in any way, speak for the others.

"Our attention focused on the equipment and none of the testimony.

"After some deliberation, it was noticed that the truck in the picture had been repaired. The caster section

was welded. This allowed the argument that the product in contention was used and abused beyond 'normal' usage and, therefore, beyond the liability of the manufacturer.

"So, therefore, it is my opinion that your client's selection of that particular example caused the decision against him." (Plaintiff's brief, exhibit A.)

Pennsylvania law prohibits the admission of testimony of a discharged juror as to what occurred among the jurors in the jury room. *Pittsburgh National Bank v. Mutual Life Insurance Co. of New York,* 493 Pa. 96, 100, 425 A.2d 383, 385 (1981). This prohibition does not extend to testimony regarding misconduct of a juror, a party, a court official, or other person, in relation to jury deliberations. *Id.* However, even where misconduct is alleged, discharged jurors are not permitted to testify regarding "the *effect* which these extra-evidentiary influences had upon the jurors in reaching a decision . . . ." (emphasis in original) *Commonwealth v. Zlatovich,* 440 Pa. 388, 396, 269 A.2d 469, 473 (1970). Such testimony is "inherently unreliable" and ultimately "irrelevant," because "[t]he only act performed by the jury to which any legal significance is attached is the *rendering of the verdict.*" *Id.* at 396-97, 269 A.2d at 473. (emphasis in original) Thus, the Pennsylvania rule has been characterized as a "canon of 'no impeachment' with a narrow exception of 'allowing post-trial testimony of extraneous influences which might have affected (prejudiced) the jury during their deliberations.' " *Pittsburgh National Bank, supra* at 101, 425 A.2d at 386 (quoting *Commonwealth v. Sero,* 478 Pa. 440, 448, 387 A.2d 63, 67 (1978)).

In the present case, plaintiff provides no evidence of extraneous influences on the jury's deliberation that would require a post-trial hearing. Juror no. six's letter merely discusses the subjective processes of deliberation and may not be considered by this court. Compare *Carter by Carter v. U.S. Steel Corp.,* 529 Pa. 409, 412-20, 604 A.2d 1010, 1012-16 (1992) (judgment of plurality) (post-trial testimony admissible where jurors discussed television broadcast concerning defendant); *Boring v. LaMarca,* 435 Pa. Super. 487, 493, 646 A.2d. 1199, 1202-1203 (1994) (post-trial hearing on prejudicial effect proper, where juror opened law book and read aloud to the jury a definition of a material legal term), *allocatur denied,* 539 Pa. 673, 652 A.2d 1319 (1994). Moreover, in the present case, the court charged the jury to decide the case only "on the basis of the evidence in the courtroom," and then explained what constitutes evidence. (N.T. 4-7.) The court charged the jury to avoid extraneous influences that might prejudice the case. *Id.* See *Carter, supra* at 423, 604 A.2d at 1017-18 (court's charge mitigated potential prejudice); *Boring, supra* at 495-98, 646 A.2d at 1203-1205 (same).

Accordingly, plaintiff's argument, that a new trial is warranted because the verdict is contrary to the court's charge, fails. First, plaintiff has not shown that an extraneous influence prejudiced the verdict. Second, the verdict for defendants does not shock the court's sense of justice. See *Neison v. Hines, supra* at 520, 653 A.2d at 636 (standard for grant of new trial); see also, section II.A. *supra.* As discussed above, the uncontested facts established by trial evidence, taken in the best light for plaintiff, supported the jury's verdict. See section II.A. *supra.*

## C.

Plaintiff Paul Wiesen next argues that the court's charge concerning the unavailable hand truck confused the jury, which reached a verdict contrary to the evidence. Plaintiff asked for, and received, a clarification of the charge concerning the availability of the actual instrument. The court charged the jury:

"In my judgment, if you determine that this is not the same hand truck or similar with respect to the elements that are talked about and involved, if it is not the same, then you should not take that into consideration in evaluating this case. I mean to say, the fact that the actual hand truck or perfect exemplar thereof is not here should not be held against anyone because there is no indication that it's anyone's fault that the exact replica is not available, if in fact, it is not available." (N.T. 384-85.)

Plaintiff asked for a further clarification on this point:

"Judge, just when you were talking about the unavailability, you said unavailability of a replica. The unavailability issue goes to the actual hand truck that was in use, not the replica situation, Judge. I just say that for clarification purposes." (N.T. 386-87.)

The court accepted that its comment on the exemplar may have caused confusion, and gave plaintiff's clarification to the jury:

"When I indicated that you should not be concerned, that is, not hold it against either party that the actual instrument is not here, I used the word 'replica,' but the lawyers would prefer that I point out that it is the unavailability of the actual instrument itself, the actual hand truck itself that was involved in this accident,

not a replica, that the unavailability of that actual instrument should not be prejudicial to either side in this case." (N.T. 387-88.)

The court then asked for plaintiff's assurance that the matter was resolved to his satisfaction:

"[THE COURT:] Does that cover your points?

"MR. FLANAGAN: Yes, it does, your honor. Thank you.

"MR. STONELAKE: Thank you, your honor." (N.T. 388.)

Plaintiff assented to the clarified jury charge and cannot now complain of prejudicial error due to that jury charge. Moreover, plaintiff faces a heavy burden in seeking to overturn a jury verdict on the ground that a charge was erroneous. Pennsylvania courts will not grant a new trial on the ground of erroneous charge unless the instructions are "fundamentally in error, and it . . . appear[s] that the erroneous instructions might have been responsible for the verdict." *Hawthorne v. Dravo Corp., Keystone Division,* 352 Pa. Super. 359, 368, 508 A.2d 298, 303 (1986), *allocatur denied,* 514 Pa. 617, 521 A.2d 932 (1987) (quoting *McCann v. Amy Joy Donut Shops,* 325 Pa. Super. 340, 342, 472 A.2d 1149, 1150 (1984) (en banc)). The charge must "accurately define the issues and correctly review the applicable law." *Cooper v. Burns,* 376 Pa. Super. 276, 283, 545 A.2d 935, 938 (1988), *allocatur denied,* 522 Pa. 619, 563 A.2d 888 (1989). Based on these standards, it is clear that there was no error in the jury charge.

Plaintiff does not point to an error of law in the charge nor to an issue that was not accurately defined. The court reiterated plaintiff's requested points that the

actual instrument was unavailable through no fault of any party and that this should not reflect on either party. This issue was accurately defined by the court, and no error was committed.

## D.

Plaintiff Paul Wiesen next argues that the court erred by precluding plaintiff's counsel from asking venirepersons whether the unavailability of the actual hand truck would influence their verdict. Plaintiff's argument fails.

Voir dire examination of venirepersons is undertaken to ensure "a competent, fair, and impartial jury." *Lenkiewicz v. Lange,* 242 Pa. Super. 87, 93, 363 A.2d 1172, 1176 (1976). The scope of voir dire rests within the sound discretion of the trial judge. *Id.* Pennsylvania courts elaborated these standards in subsequent criminal cases. Since the purpose of voir dire of the venire is the same in civil and criminal cases, the standards should be the same. During voir dire, "the parties are limited to determining whether a juror has a fixed opinion or may otherwise be subject to disqualification for cause. Hypothetical questions, or questions which seek to determine what a juror's decision might be, based upon the evidence to be presented at trial, are improper." *Commonwealth v. Mignogna,* 401 Pa. Super. 188, 201, 585 A.2d 1, 7 (1990), *allocatur denied,* 530 Pa. 660, 609 A.2d 167 (1992).

In the present case, plaintiff's counsel sought to ask venirepersons how the unavailability of the actual hand truck would affect their verdict. This question does not probe the venirepersons' fixed opinions but instead asks about facts shown at trial. This question was prop-

erly precluded from voir dire. Counsel's concerns were adequately addressed in the court's charge. See section II.C. *supra.*

*E.*

Plaintiff Paul Wiesen next argues that the court erred in providing the jury with photographic exhibits of the exemplar hand truck, and that this error misled the jury. The court did not commit prejudicial error.

Defendants asked the court to send out plaintiff's photographic exhibits with the jury to the deliberation room. The exhibits, marked plaintiff's exhibits one through five, were provided by plaintiff's expert Kenneth Taber. Taber testified that the exhibits showed an exemplar hand truck which was identical to the hand truck used by Wiesen on the day of the accident. Plaintiff's counsel arranged for the jury to see the exhibits. *Id.* Plaintiff's counsel referred to the exhibits during direct examination and redirect of Taber, and cross-examination of Wesley Byrd. Although plaintiff's exhibits one through five were not formally moved into evidence, this appears to be an oversight, since plaintiff showed the exhibits to the jury, and plaintiff acknowledged that the exhibits showed an exemplar hand truck which was identical to the hand truck used by Wiesen. Furthermore, plaintiff's objection to sending the exhibits out with the jury was not based on the argument that the exhibits were not evidence.

At the close of evidence, the court charged the jury, in part: "you must be guided by your recollection [of the testimony]," (N.T. 337); "[y]our duty, too, is to evaluate the credibility or believability of the witnesses

who testified," (N.T. 374); and that the jurors must weigh the evidence. The court also charged the jury, that if they found that the actual hand truck was not available, circumstance should not be held against any party.

As the jury commenced deliberations, defendants requested that plaintiff's exhibits one through five go out with the jury. Plaintiff objected on the ground that the jury might think the exhibits were "of some greater significance" if they were sent out with the jury. (N.T. 389.) Plaintiff requested that the exhibits be withheld from the jury unless they asked to see them in the deliberation room. *Id.* The court ruled that the exhibits would go out with the jury, since the jury received extensive instructions regarding the weight to be given the exhibits.

Looking at the record as a whole, the jury received testimony indicating that plaintiff's exhibits showed an exemplar hand truck. In addition, the court charged the jury, in part, to weigh all the testimony, and not to allow the unavailability of the actual hand truck to prejudice either party. Thus, the jury had ample indication of the significance of plaintiff's exhibits.

Furthermore, the technical oversight, namely, failing to introduce exhibits into evidence, should not negate the jury's verdict. Pennsylvania law recognizes the policy that cases should be decided on the merits and not on technicalities. For instance, amendment of pleadings is allowed after judgment. See *Carringer v. Taylor,* 402 Pa. Super. 197, 206, 586 A.2d 928, 932-33 (1990) (no abuse of discretion where trial court denied defendant's petition to amend counterclaim; nevertheless,

amendment generally allowed after judgment or after award), *allocatur denied,* 533 Pa. 629, 621 A.2d 576 (1992); *Horowitz v. Universal Underwriters Insurance Co.,* 397 Pa. Super. 473, 477-83, 580 A.2d 395, 398-400 (1990) (plaintiff granted leave to amend answer to counterclaim four years after filing answer), *allocatur denied,* 527 Pa. 610, 590 A.2d 297 (1991). In view of the fact that courts allow the extreme change worked by amendment of pleadings after judgment, the minor evidentiary oversight in this case is not a ground for a new trial.

Nonetheless, plaintiff argues that plaintiff's exhibits one through five misled the jury and prejudiced the verdict. Plaintiff bases his argument on the post-verdict letter of juror no. six. However, as discussed above, the letter is not admissible, as it merely discusses the subjective process of deliberation and does not allege misconduct of any party. See *Carter by Carter v. U.S. Steel Corp., supra* at 415, 604 A.2d at 1013-14 (post-trial testimony may not address the subjective deliberation process); see also, section II.B. *supra.* Therefore, the court cannot consider this letter or plaintiff's argument based on it.

Moreover, in Pennsylvania, the trial court has the discretion to determine which exhibits go out with the jury. *Wagner by Wagner v. York Hospital,* 415 Pa. Super. 1, 16, 608 A.2d 496, 503 (1992). The trial court must avoid sending prejudicial exhibits out with the jury. *Mineo v. Tancini,* 349 Pa. Super. 115, 124, 502 A.2d 1300, 1304 (1986), *allocatur denied,* 515 Pa. 614, 530 A.2d 868 (1987), *allocatur denied,* 516 Pa. 634, 533 A.2d 92 (1987), *aff'd,* 517 Pa. 335, 536 A.2d 1323 (1988).

In the present case, plaintiff has not shown he was prejudiced by the exhibits in the deliberation room. The jury heard extensive testimony on the exemplar hand truck shown in the exhibits. Moreover, plaintiff bases his argument regarding prejudice on the letter of juror no. six, which is incompetent evidence on the jury deliberation process. Plaintiff cannot show prejudice by reference to the jury's verdict, because the evidence supported the verdict. See section II.A. *supra*. Absent a showing of prejudice, plaintiff's argument for a new trial on this ground fails.

## *F.*

Plaintiff Paul Wiesen next argues that the court erred in allowing defendants' expert to testify regarding physical principles and operation of hand trucks, including disengaging the second set of wheels. Plaintiff argues that this testimony went beyond the scope of the expert's report. Plaintiff also argues that defendants' expert answered a hypothetical question that improperly assumed facts not in evidence. These arguments fail.

First, plaintiff argues that defendants' engineering expert, Clyde Richard, exceeded the scope of his pretrial report in his trial testimony. Plaintiff points to Richard's testimony in which he responded to questions probing the physical principles behind the operation of a hand truck, and the specific operation of the exemplar hand truck. Richard explained, over plaintiff's objection, that a hand truck is essentially a lever and that the operator tilts a load backward and balances it on the main wheels of the truck. Next, Richard described, over plaintiff's objection, how the second set of wheels on the exemplar hand truck would lock into the extended position. Rich-

ard then answered, over plaintiff's objection, that in his opinion, it was not possible for the second set of wheels to disengage and move into the retracted position without the operator actually releasing the lever on the hand truck.

In Pennsylvania, the scope of experts' trial testimony is governed by the trial court's discretion, as guided by Pa.R.C.P. 4003.5(c) and its underlying purposes, both to prevent unfair surprise and to enable adequate trial preparation by all parties. *Walsh v. Kubiak,* 443 Pa. Super. 284, 291-93, 661 A.2d 416, 419-21 (1995), *allocatur denied,* 543 Pa. 716, 672 A.2d 309 (1996). Thus, where a party relies on an opposing expert's pretrial report for trial preparation, and discovery proceedings produce no further information, that party can expect the protection of the court from unfair surprise through trial testimony not included in the report. *Id.*

In the present case, plaintiff relied on Richard's pretrial report in trial preparation. Richard's report discussed the use of a hand truck by one person to move a heavy vending machine. The report summarized Wiesen's deposition, William Miller's statement concerning the accident, and the report of plaintiff's engineering expert, Kenneth Taber. The report then presented the results of an examination of an exemplar hand truck manufactured by defendant Stevens. This examination detailed the operation of the second set of wheels in their extended and retracted positions. The examination discussed the various mechanisms and forces that locked the second set of wheels in the extended position, and the methods to disengage the second set of wheels. Richard's report then discussed Wiesen's statement in his deposition, that the second set of wheels retracted

due to forces applied as he tried to pull the hand truck over the shallow lip in the warehouse floor. Richard concluded, in his report, that the actual hand truck had a similar assembly and that the second set of wheels would not retract without Wiesen's action in pulling a release lever.

Richard's report incorporated in its scope the physical principles underlying the operation of the hand truck, because the report discussed how one person would use the hand truck to lift a heavy load. Thus, the court did not err in allowing Richard to testify regarding the lever principle of the hand truck. Similarly, the report discussed the locking mechanisms on the exemplar hand truck, and the court did not err in allowing Richard to testify regarding those mechanisms. Finally, the report discussed the methods to disengage the second set of wheels from the extended position, and the court did not err in allowing Richard to testify to his opinion on possible ways the second set of wheels could be disengaged.

Next, plaintiff argues that defendants' counsel asked a hypothetical question that improperly assumed facts not in evidence. Defendants' counsel asked defendants' expert. Richard:

"Q: Now, I'd like, Dr. Richard, that—Mr. Wiesen has described how the accident occurred.

"A: Yes.

"Q: And I'd like you to assume this is what he said: That he was trying to move the appliance truck with a soda machine, a vending machine, out of the garage onto a ramp to go up and put the vending machine in the truck itself, the delivery truck.

"And as he was doing that, the smaller set of wheels—as he was doing that, the smaller set of wheels had already crossed this position where there was a lip onto a plate. And as he continued, the second set of wheels was now on the platform past the lip going on to the truck—going on to the platform that leads to the truck, both sets of wheels.

"When he did this, he lifted the first set, tilted, got the second set of wheels over and then said, okay, let's do it. Then it started. I'm pulling, he's pushing, both wheels went on to the ramp. And then those wheels went in and then I'm fighting it down to the ground.

"And the lip has been described as a quarter of an inch to an eighth—to a half inch that it went over.

"Now, with that scenario in mind and your analysis of this appliance truck, do you have an opinion, based upon a reasonable degree of medical [sic] certainty, as to how—as to whether or not—as to how the accident occurred?

"MR. FLANAGAN: Your honor, I would interject an objection here.

"While counsel is reading from notes of testimony from a deposition or alluding to notes of testimony of a deposition, this is clearly not what the testimony of Mr. Wiesen has been.

"THE COURT: There are references from varying persons as to how the accident happened. I will allow this." (N.T. 305-306.)

Richard's report made reference to depositions and statements, a practical necessity before trial. However, when the hypothetical question was posed, it was supported by the testimony of Wiesen and William Miller.

Wiesen testified that he and William Miller pulled and pushed the hand truck and, as he pulled the truck over the shallow lip in the warehouse floor, he tilted it forward and then noticed that the second set of wheels was moving back to the retracted position. Thus, Wiesen's trial testimony tended to establish the facts as stated by defendants' counsel in the hypothetical. Moreover, as the court noted to plaintiff's counsel, the jury received testimony from William Miller, a warehouse employee on site during the accident. Miller's testimony contradicted Wiesen's testimony. Miller testified that Wiesen pulled a release lever on the hand truck to release the second set of wheels. Thus, the record contained evidence supporting the facts assumed by defendants in the hypothetical question. Pennsylvania law requires that hypothetical questions assume facts proved or supported by evidence on record. *Vernon v. Stash,* 367 Pa. Super. 36, 52, 532 A.2d 441, 449 (1987). Defendants' hypothetical question was proper.

## G.

Lastly, plaintiff Paul Wiesen argues that the court erred in allowing defendants to cross-examine plaintiff's treating physician regarding the written reports of plaintiff's physical therapists. This argument fails, and furthermore, is of little importance because the jury found defendants not liable.

During defendants' cross-examination of Wiesen's treating physician, Dr. Walter Dearolf III, defendants questioned Dearolf regarding reports from Wiesen's physical therapists. Dearolf prescribed physical therapy for Wiesen's injured knee. The physical therapists made reports for Dearolf, assessing Wiesen's progress, which

Dearolf relied on, both in diagnosing Wiesen and in rendering opinions for testimony. Over plaintiff's objection, defendants asked Dearolf about the substance of some of the physical therapists' reports. These reports stated that test results showed that Wiesen may not have expended his full effort during the tests.

Pennsylvania courts recognize an exception to the hearsay exclusionary rule, for reports on which experts reasonably relied in reaching their professional conclusions. *Primavera v. Celotex Corp.,* 415 Pa. Super. 41, 50, 608 A.2d 515, 518 (1992), *allocatur denied,* 533 Pa. 641, 622 A.2d 1374 (1993). Therefore, experts in general, and medical experts in particular, can testify about reports and other information sources, not in evidence, on which they relied, as long as the information source is of a type on which experts in the field reasonably rely in making professional judgments. *Id.* at 50, 608 A.2d at 518-19. In fact, the fact-finder is aided in evaluating the expert's opinion, when the expert discloses the sources on which he or she relied. *Id.* at 57, 608 A.2d at 523. However, the expert can't merely "repeat another's opinion or data without bringing to bear on it his own expertise and judgment." *Id.* at 52, 608 A.2d at 521. This is so because the fact-finder relies on the expert to evaluate the trustworthiness of the data on which he or she relies. *Id.* at 51, 608 A.2d at 519-21.

In the present case, Dearolf relied on the physical therapists' reports in forming his expert opinion. Therefore, defendants' cross-examination of Dearolf regarding the reports was proper.

For the foregoing reasons, plaintiff Paul Wiesen's motion for a new trial was denied.