Robert ORNDOFF, Appellee,

v.

Sarah Beth WILSON, Appellant.

Superior Court of Pennsylvania.

Argued June 28, 2000.
Filed Aug. 11, 2000.
Reconsideration Denied Oct. 20, 2000.

James D. Elder, Pittsburgh, for appellant.

Paul A. Tershel, Washington, for appellee.

BEFORE: JOYCE, ORIE MELVIN and MONTEMURO *, JJ.

MONTEMURO, J.:

¶ 1 This is an appeal from a judgment in favor of Appellee for $107,271.98 awarded in an action for personal injuries suffered by Appellee in an automobile accident.

¶ 2 On August 24, 1994, Appellee's van was struck broadside by Appellant's car as he attempted to make a left turn into a filling station. Appellant had stopped at a stop sign positioned on a street at an angle to the road Appellee was travelling, and had turned right to pull into traffic. While looking in her rear view mirror, she entered the roadway and apparently accelerated, colliding with Appellee as he was completing his turn into the entrance of the station. When the van overturned upon impact, Appellee's hand was pinned outside the vehicle and crushed.

¶ 3 On appeal, three issues are presented assigning error to the trial court's 1) refusal to grant a new trial on the basis that the jury verdict was against the weight of the evidence; 2) denial of Appellant's request for an evidentiary hearing on the allegation of juror misconduct; and 3) failing to grant a judgment notwithstanding the verdict [1] or a new trial on the basis that certain evidence was improperly introduced.

¶ 4 Our court will not reverse the trial court's grant or denial of a new trial unless its decision presents a gross abuse of discretion or an error of law. *Mitchell v. Gravely International, Inc.*, 698 A.2d 618, 619 (Pa.Super.1997). "The trial court may only grant a new trial when the jury's verdict is so contrary to the evidence that it 'shocks one's sense of justice.' " *Kiser v. Schulte*, 538 Pa. 219, 225, 648 A.2d 1, 4 (1994).

¶ 5 Appellant first argues that the jury verdict was against the weight of the evidence because Appellee "was clearly negligent ... when he attempted to negotiate a left-hand turn directly into the path of the defendant's oncoming vehicle *without looking*." (Appellant's Brief at 20) (emphasis in original).

An appellate court, by its nature, stands on a different plane than a trial court. Whereas a trial court's opinion to grant or deny a new trial is aided by an on-the-scene evaluation of the evidence, an appellate court's review rests solely upon a cold record. Because of this disparity in vantage points an appellate court is not empowered to merely substitute its opinion concerning the weight of the evidence for that of the trial judge. Rather, our court has consistently held that appellate review of the trial court's [decision] is to focus on whether the trial judge has palpably abused his discretion, as opposed to whether the appellate court can find support in the record for the jury's verdict.

*Thompson v. City of Philadelphia*, 507 Pa. 592, 599, 493 A.2d 669, 673 (1985).

¶ 6 After having reviewed the entire record, we find no error in the trial court's conclusion that the facts are not as Appellant would now have us believe them to be, and that the jury, as is its prerogative, accepted Appellee's version of events over that of Appellant, who conceded that at the time of the accident, she was not watching the roadway, but was looking in her rearview mirror. Given the physical evidence, location of the tire marks and radiator fluid spill, the relative positions of the vehicles immediately after the collision and

---

* Retired Justice assigned to Superior Court.

1. Correction of errors in the admission or exclusion of evidence is the subject of a motion for a new trial, *Greer v. Bryant*, 423 Pa.Super. 608, 621 A.2d 999 (1993), not of a judgment notwithstanding the verdict.

the testimony of both parties, we find no abuse of the trial court's discretion.

■ ¶ 7 Next, Appellant contends that relief is due because of the trial court's refusal to hold a post trial evidentiary hearing on what she characterizes as juror misconduct, specifically the jury foreman's visit to the scene of the accident, despite instructions not to do so, which she claims affected the verdict.

■ ¶ 8 The evidentiary rule in Pennsylvania regarding testimony of discharged jurors is " 'a canon of no impeachment' with a narrow exception of 'allowing post-trial testimony of extraneous influences which might have affected [prejudiced] the jury during their deliberations.' " *Pittsburgh National Bank v. Mutual Life Insurance Company of New York*, 493 Pa. 96, 101, 425 A.2d 383, 386 (1981) (insertion in original) (quoting *Commonwealth v. Sero*, 478 Pa. 440, 448, 387 A.2d 63, 67 (1978)). Our Supreme Court in *Carter by Carter v. U.S. Steel*, 529 Pa. 409, 604 A.2d 1010 (1992), established that given awareness of the potentially prejudicial (extraneous) material, the trial court must apply an objective test to determine how an objective typical juror would be affected by the information in light of the facts and circumstances of the particular case. However, "testimony as to the subjective reasoning processes of the jurors is inadmissible." *Id.* at 416, 604 A.2d at 1014.

¶ 9 Here the trial court found that the jury was never specifically instructed not to visit the accident site, since such an instruction would be useless given the frequency with which the particular intersection where the accident occurred is traveled. Moreover, the court correctly concluded that it would be improper to examine a juror as to "the effect outside influence may have had on deliberations." (Order, dated 10/21/99).

¶ 10 The circumstances herein find their closest analogue in the facts of *Friedman v. Ralph Bros., Inc.*, 314 Pa. 247, 171 A. 900 (1934). There too the allegation was made that a juror, also the foreman, had visited the scene of the accident, had made measurements, and had reported his conclusions to his fellow jurors. While deploring the juror's actions, our Supreme Court noted that because the information he communicated was already before the jury, no prejudice could have accrued. The Court held that "[o]nly in clear cases of improper conduct by jurors, evidenced by competent testimony, should a verdict which is fully supported by the evidence be set aside and a new trial granted." *Id.* at 249, 171 A. at 901.

¶ 11 Here, Appellant offers five affidavits in support of her claim. Of these, three are unsigned and are therefore valueless. One, signed by Appellant's mother, not a juror, reports that the errant juror was heard to recount his visits to the accident site, made investigations, and concluded that Appellant was looking in her rear view mirror rather than in front of her as she pulled into traffic and struck Appellee's van, a fact to which Appellant testified at trial. The affiant states that she heard this information following the verdict and the discharge of the jury, thus there is nothing in the statement, which is in all events hearsay recounted by an interested person, to demonstrate that the results of the jury foreman's investigations were made known to his fellow jurors at any point prior to the jury's being discharged. The remaining affidavit states merely that the errant juror had "checked out traffic, made references to checking out the speed of the vehicles at the intersection, and that based on his investigation, he had determined that the defendant had only gotten to the point of impact by breaking the speed limit." (Affidavit of Frank Magnone at 1–2).

¶ 12 As did the Court in *Friedman*, we find the juror's conduct to be condemned, but that the information supposedly productive of taint was contained in evidence produced at trial and thus not prejudicial. Because the jurors had been given no in-

struction to avoid the accident site, a matter conceded by Appellant, and because the extraneous information was not new, this is not a clear case of juror misconduct, and accordingly, the trial court herein correctly denied Appellant's request for an evidentiary hearing.

¶ 13 Finally, Appellant argues that the trial court erred in permitting Appellee to introduce evidence of his medical expenses at trial, and to recover for them. In support of her claim, Appellant relies on our Supreme Court's decision in *Martin v. Soblotney*, 502 Pa. 418, 466 A.2d 1022 (1983), and on the statutory prohibitions against recovery for medical expenses contained in 75 Pa.C.S.A. § 1722 of the Motor Vehicle Responsibility Act (MVRA) and precluding subrogation in Section 1720 of the MVRA. All of these authorities prohibit claims for non-economic damages arising out of the maintenance or use of a motor vehicle where the person seeking damages is eligible for insurance coverage, a matter regulated by the Commonwealth. Appellant contends that Appellee is such a person.

¶ 14 All of Appellee's medical expenses were covered by his employer's self-funded welfare and benefit plan. Such plans consist of funds contributed by both employer and employees and are regulated exclusively by ERISA, the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*[2] ERISA, which preempts state laws relating to employee benefit plans, permits such plans to purchase stop/loss insurance, in this instance from Trans-America Insurance Company, to cover

amounts expended over and above the per employee cap set for a given year, which in the case of Appellee's employer is $17,-500.00. ERISA also permits self-funded plans to contract for a right of subrogation to recoup medical expenses exceeding the cap. Appellee's medical claims, which totaled $38,217.00, never exceeded the limit in any given year. Nevertheless, Appellant's argument is that purchase of the stop/loss coverage brought the employer's plan either directly or indirectly under the supervision of the Commonwealth, circumventing the supersession clause of ERISA.

¶ 15 There is no state law on this issue, but the federal courts have addressed it directly. As the trial court here found, in *Drexelbrook Engineering Co. v. The Travelers Insurance Co.*, 710 F.Supp. 590 (E.D.Pa.1989), *aff'd. without opinion*, 891 F.2d 280 (3 rd Cir. Pa.1989), when confronted with the same argument as Appellant advances, the district court specifically held that purchase of excess stop/loss insurance did not destroy a plan's self-funded status. The court held that

[b]ecause it is well known that most self-funded plans purchase some form of excess insurance to protect themselves against catastrophic loss, we find that Congress could not have intended that such protection would remove those plans from the umbrella of ERISA. Such a construction of ERISA would virtually emasculate the deemer clause, a result Congress clearly could not have intended.

*Id.* at 597–98.

¶ 16 Later, the United States Supreme Court ruled in *FMC Corp. v. Holliday*, 498

2. 29 U.S.C.A. § 1144(a) (preemption clause) states in relevant part:
   Except as provided in subsection (b) of this section [the saving clause] the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . .
   Section 1144(b)(2)(A) (saving clause) states in relevant part:
   Except as provided in subparagraph (B)[the deemer clause], nothing in this title shall be construed to exempt or relieve any person

from any law of any State which regulates insurance, banking, or securities.
   Section 1144(b)(2)(B) (deemer clause) states in relevant part:
   Neither an employee benefit plan . . . nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer . . . or to be engaged in the business of insurance . . . for purposes of any law of any State purporting to regulate insurance companies, [or] insurance contracts . . .

U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), that Section 1720 of Pennsylvania's Motor Vehicle Responsibility Law, which precludes subrogation or reimbursement out of damages recovered by a claimant in a tort action, is preempted by ERISA. The Court held that self-insured ERISA plans were not to be considered/deemed insurance companies for purposes of ERISA, and that state laws, such as Pennsylvania's, which purported to regulate such plans were, to that extent, overridden.

¶ 17 Thereafter, Section 1722 of Pennsylvania's motor vehicle code was found to be preempted by ERISA in *Travitz v. Northeast Dept. ILGWU Health and Welfare Fund*, 13 F.3d 704 (3d Cir.(Pa.)1994), where a self-funded plan was also involved. There the circuit court reasoned that Section 1722 had a "connection" to ERISA, which is the equivalent of being "related to" an employee benefit plan under the preemption clause of the statute. As such, Section 1722 had the effect of subjecting plan administrators to conflicting state regulations, the specific evil ERISA was intended to address. Accordingly, Section 1722 was found to be inapplicable to self-insured ERISA plans.

¶ 18 These decisions effectively counter the state authorities relied upon by Appellant. Moreover, the federal authority Appellant advances to support her position is similarly unpersuasive. She insists that the result in this matter should be dictated by the holding in *Northern Group Services v. Auto Owners Insurance Co.*, 833 F.2d 85 (6 th Cir. Mich.1987). In that case the circuit court held that once stop/loss elements were introduced into a self-funded plan, the plan was no longer self-funded. The court attempted to narrow the scope of the preemption clause on grounds that to exclude from state supervision plans with coordination of benefits provisions would encroach on traditional state prerogatives in the regulation of insurance. However, *Northern* was, in effect, overruled by the United States Supreme Court's holding in *FMC*, *supra*. The Supreme Court, in reviewing the Third Circuit's decision in *FMC*, noted its reliance on the rationale in *Northern*, that is, that " 'the deemer clause [was] meant mainly to reach backdoor attempts by states to regulate core ERISA concerns in the guise of insurance regulation.' " *FMC*, 498 U.S. at 56, 111 S.Ct. at 406, 112 L.Ed.2d at 363 (quoting *FMC Corp. v. Holliday*, 885 F.2d 79, 86 (3 rd Cir. Pa.1989)).

¶ 19 In reversing the lower court decision, the Court reiterated that the breadth of the preemption clause in ERISA encompassed subjects beyond those specifically enumerated in the text of the statute. Rather, the clear intent of Congress was to include within the ambit of preemption all matters "connected to," "related to," "referred to" or otherwise concerned with employee benefit plans, not merely those named. This invalidation of *Northern's* holding insofar as it concerned self-insured ERISA plans was specifically confirmed in *Auto Club Insurance v. Health & Welfare Plans*, 961 F.2d 588 (6 th Cir. Mich.1992).

¶ 20 Judgment affirmed.