J-A03017-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JERRY CHAI | : | |
| | : | |
| Appellant | : | No. 135 WDA 2018 |

Appeal from the Judgment of Sentence September 25, 2017
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0005246-2014

BEFORE:   BOWES, J., SHOGAN, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED: APRIL 13, 2021**

Appellant, Jerry Chai, appeals from the judgment of sentence entered on September 14, 2017, following his conviction for indecent assault without consent, 18 Pa.C.S. § 3126(a)(1).  After careful review, we affirm.

We set forth the following factual and procedural history.  On September 14, 2014, S.F. ("Victim") reported that Appellant had sexually assaulted her in his apartment.  Victim was a college freshman at Seton Hill University, and Appellant was attending the Lake Erie School of Osteopathic Medicine at Seton Hill University.  Following a three-day criminal trial, wherein Appellant argued, *inter alia*, that the sexual assault was a consensual encounter, a jury found Appellant guilty of one count of indecent assault without consent.  On September 25, 2017, the trial court sentenced Appellant to two years of probation and required him to comply with the reporting

_____
*   Retired Senior Judge assigned to the Superior Court.

requirements of the Sexual Offender Registration and Notification Act, 42 Pa.C.S. §§ 9799.10–9799.41 ("SORNA/Act 10").

Immediately following sentencing, Appellant filed a post-sentence motion. Post-Sentence Motion, 9/25/17.[1, 2] In that motion, Appellant sought a new trial on the grounds that Juror Number Ten ("Juror Ten"), an individual who had worked with victims of sexual assault, introduced prejudicial extrinsic evidence into the jury deliberations in violation of Appellant's "Right of Confrontation, of Cross-Examination, and of Counsel, thus [depriving Appellant] of his constitutional right to an impartial jury." *Id*. at 2. Appellant alleged that after the trial, three jurors (Jurors Four, Six, and Eleven) approached defense counsel and indicated that Juror Ten introduced prejudicial facts not of record into the deliberations. *Id*. at 3. Appellant retained a licensed private investigator, who, after speaking with the three jurors, obtained notarized affidavits regarding Juror Ten's statements. *Id*. Appellant also argued that the verdict was against the weight of the evidence. *Id*. at 15. In support of this claim, Appellant argued that the verdict was

_____

[1] On July 24, 2017, Appellant had filed a Notice of Intent to Seek an Oral Motion for Extraordinary Relief Pursuant to Pennsylvania Rule of Criminal Procedure 704(B)(1). His motion for extraordinary relief was denied on August 25, 2017, without prejudice to file the same request as a post-sentence motion. Thus, Appellant's counsel brought his post-sentence motion to the sentencing and filed it immediately afterwards.

[2] Appellant did not raise the legality or constitutionality of his sentence as it relates to SORNA/Act 10 in his post-sentence motion or during the hearing on that motion.

contrary to the weight of the evidence because the only evidence implicating Appellant was Victim's "unreliable and untrustworthy" testimony. *Id*. at 16.

The court held a hearing on Appellant's motion immediately after sentencing on September 25, 2017. During the hearing, Appellant presented the testimony of the three jurors. Juror Four testified that Juror Ten "either volunteered or worked with rape victims" and that Juror Ten "could tell by the body language that the…[Victim] was having while she was giving her testimony, that she was being – that she was emotionally damaged by the incident that happened, and that she related that to working with rape victims." N.T.(Sentencing and Post Sentence Motion hearing), 9/25/17, at 23. Juror Four further testified that Juror Ten mentioned several times that she worked with rape victims, and articulated her belief that Appellant was guilty based on Victim's body language. *Id*. at 23, 27. Juror Six testified that Juror Ten brought up her experience with rape victims "every five, ten minutes," that Juror Ten concluded Appellant was guilty based on Victim's and Appellant's body language, and she seemed to believe Appellant was guilty before any deliberations occurred. *Id*. at 33–35. Finally, Juror Eleven testified that Juror Ten said, "Something along the lines as she had worked with rape victims and seen, like, their emotions, you know, was able to tell whether or not they were a victim." *Id*. at 41. Juror Eleven further testified that Juror Ten said she had worked with rape victims and based on Victim's body language, Juror Ten concluded that Appellant was guilty. *Id*. at 42–43. Following briefing by the parties, the trial court denied Appellant's post-

sentence motion on January 4, 2018. Appellant filed a timely appeal with this Court. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following questions for our review:

I. Did the trial court abuse its discretion by denying the motion for a new trial when Juror #10, who through her employment had contact with alleged victims of sexual assault, introduced prejudicial extrinsic evidence into jury deliberations and thereby deprived [Appellant] of his constitutional right to a fair trial in violation of Article 1, Section 9 of the Pennsylvania Declaration of Rights and the Sixth Amendment of the United States Constitution?

II. Did the lower court [abuse] its discretion in denying [Appellant] a new trial where it could have found that the verdict was not contrary to the weight of the evidence if it ignored the unrefuted, objective evidence, or gave it equal weight with the subjective facts relevant to the question of [Appellant] acted intentionally, knowingly or recklessly regarding the victim's purported non-consent?

III. Did the trial court err in imposing an illegal sentence by requiring [Appellant] to register under SORNA?

    A. Did the court err in imposing the registration, notification and counseling requirements under SORNA for a period of fifteen years, which exceeds the statutory maximum penalty for Indecent Assault, a Misdemeanor 2 offense under 18 Pa.C.S. § 3126(a)(1)?

    B. Did the court err in imposing SORNA's requirements, which violate due process rights, and constitute unusual punishment in violation of the Pennsylvania and United States Constitutions?

Appellant's Brief at 5.

In support of his first issue, Appellant argues that the foundational principle of the jury system is "that every litigant who is entitled to a jury trial

is entitled to an impartial jury, free to the furthest extent practicable from extraneous influences that may subvert the fact-finding process." Appellant's Brief at 38 (quoting *Carter by Carter v. U.S. Steel Corp.*, 604 A.2d 1010, 1015 (Pa. 1992)). Appellant further avers that an impartial jury requires that all of its members are free from bias and that those members decide the case based on the evidence before them. Appellant's Brief at 38. Appellant asserts that Juror Ten's statements regarding Victim's in-court behavior and body language constituted impermissible expert testimony. *Id*. at 41. Specifically, Appellant points to Juror Ten's statements that she worked with rape victims, compared Victim's body language with the body language she observed while working with rape victims, and determined that Victim was a real victim and that Appellant was guilty. *Id*. at 41–42. Appellant posits that the statements made by Juror Ten were not part of her personal experience, but instead constituted extraneous advice. *Id*. at 40. Further, according to Appellant, Juror Ten's statements constitute expert testimony regarding the credibility of Victim, which is prohibited by 42 Pa.C.S. § 5920(b)(3) ("The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible."). Appellant's Brief at 42. Because Juror Ten's comments bring the validity of the guilty verdict into question, Appellant argues he should be awarded a new trial. *Id*. at 46.

Our standard of review is as follows:

The refusal of a new trial on the grounds of alleged misconduct of a juror is largely within the discretion of the trial judge. When the facts surrounding the possible misconduct are in dispute, the trial

judge should examine the various witnesses on the question, and his findings of fact will be sustained unless there is an abuse of discretion.

*Commonwealth v. Pope*, 14 A.3d 139, 145 (Pa. Super. 2011) (quoting

*Commonwealth v. Russel*, 665 A.2d 1239, 1243 (Pa. Super. 1995)).

Additionally, in this Commonwealth, a court will not allow jurors to impeach

their own verdict. *Commonwealth v. Messersmith*, 860 A.2d 1078, 1085

(Pa. Super. 2004). Specifically, this Court has held:

> [We] cannot accept the statement of jurors as to what transpired in the jury room as to the propriety or impropriety of a juror's conduct. To do so, would destroy the security of all verdicts and go far toward weakening the efficacy of trial by jury, so well grounded in our system of jurisprudence. Jurors cannot impeach their own verdict. Their deliberations are secret and their inviolability must be closely guarded. Only in clear cases [of] improper conduct by jurors, evidenced by competent testimony, should a verdict, which is fully supported by the evidence, be set aside and a new trial granted.

*Messersmith*, 860 A.2d at 1084–1085. This rule is known as the no

impeachment rule. *Id*. at 1085. There is a narrow exception to the no

impeachment rule which allows "post trial testimony of extraneous influences

which might have affected (prejudiced) the jury during their deliberations."

*Id*. (quoting *Pittsburgh Nat'l Bank v. Mut. Life Ins. Co.*, 425 A.2d 383,

386 (Pa. 1981)). "Extraneous information has been defined as information

that was not provided in open court or vocalized by the trial court via

instructions." *Messersmith*, 860 A.2d at 1085. Although a juror may testify

to the existence of an outside influence, he or she may not testify to the effect

the outside influence had on the deliberations or the subjective reasoning

processes. *Id*. Finally, because a trial court may not consider evidence relating to the subjective impact of the extraneous information, the test for determining the prejudicial impact of that information is an objective one; the trial court must determine how an "objective, typical juror would be affected by such an influence." *Id*. We have further explained:

> [o]nce the existence of a potentially prejudicial extraneous influence has been established by competent testimony, the trial judge must assess the prejudicial effect of such influence. *Carter*, 604 A.2d at 1016. In determining the reasonable likelihood of prejudice, the trial judge should consider: (1) whether the extraneous influence relates to a central issue in the case or merely involves a collateral issue; (2) whether the extraneous influence provided the jury with information they did not have before them at trial; and (3) whether the extraneous influence was emotional or inflammatory in nature. *Id.* at 1016–1017. This Court has held that where the extraneous evidence is not new, but rather is evidence that was presented at trial, prejudice is not established. *See Orndoff v. Wilson*, 760 A.2d 1 (Pa. Super. 2000).

*Messersmith*, 860 A.2d at 1085 (quoting *Pratt v. St. Christopher's Hosp.*, 824 A.2d 299, 303 (Pa. Super. 2003)).

In its opinion, the trial court looked to the standard criminal jury instructions given to the jury and applied them to the statements made by Juror Ten in the instant case. Trial Court Opinion, 1/4/18, at 3–4. The trial court stated:

> In standard criminal jury instruction number 4.17 titled "credibility of witnesses," two of the questions posed to the jury were "Did the witness testify in a convincing manner? [How did [she] look, act, and speak while testifying? [...]." *PA-JICRIM 4.17* (2016). Also, using standard criminal jury instruction 2.04, the jury was told to "[o]bserve each witness as he or she testifies [and] [b]e

- 7 -

alert for anything in the witness's own testimony or behavior [...] that might help [...] judge the truthfulness, accuracy, and weight of his or her testimony." *PA-JICRIM 2.04* (2016). Pursuant to these two instructions, Juror #10 was permitted to observe the body language exhibited by [Victim] and apply it in deliberations to determine her credibility and truthfulness, just as each of the remaining eleven jurors were permitted to do. Since interpretation of a witness' body language was allowed under the applicable jury instructions, Juror #10's reliance on those instructions does not fall within the extraneous information exception to the No Impeachment Rule.

Although [Appellant] agrees that a juror can use body language to determine credibility, [Appellant] argues that Juror #10's particular reliance on [Victim's] body language qualified as an expert opinion. This was because she stressed her work with sexual assault victims and how that work impacted her ability to know how an actual victim of sexual assault would react. However, this [c]ourt is not convinced that Juror #10's reliance on her past work experience qualifies as an expert opinion. In standard criminal jury instruction 7.05, the jurors were instructed that "in deciding the facts, [they] may properly apply common sense and draw upon [their] own everyday, practical knowledge of life as each of [them] has experienced it." *PA-JICRIM 7.05* (2016). Juror #10 merely drew upon her own every day, practical knowledge in weighing the credibility of [Victim's] testimony. It appears to this [c]ourt that her statements regarding her past work experience were used to explain to the other jurors why she reached the conclusion she did regarding [Victim's] credibility, rather than to bring in an extraneous influence. Each juror was told that they could observe [Victim's] body language and use that body language to determine credibility. Each juror was allowed to rely on their own personal knowledge in making that credibility determination. Therefore, the testimony presented regarding Juror #10 failed to establish the existence of extraneous information that would justify this [c]ourt in applying an exception to the No Impeachment Rule.

*Id.* at 3–4. The trial court further found that even if Juror Ten presented extraneous information, that information did not satisfy the three-prong test set forth in **Messersmith**, discussed *supra*.

As the trial court properly determined, the credibility of Victim was a central issue in the case, thereby satisfying the first **Messersmith** prong. Trial Court Opinion, 1/4/18, at 4. The court noted, however, "that the body language of [Victim] was evidence presented at trial, as each juror was instructed that they could consider the witnesses' body language, along with their own personal knowledge and common sense" to determine whether Victim was credible in her testimony. *Id*. Thus, Juror Ten's opinion regarding Victim's body language did not constitute information the jury did not have before them; rather, it was her opinion based upon her personal experience. *Id*. This sort of information does not run afoul of the second prong in **Messersmith** requiring that the extraneous influence provide the jury with information they did not have before them at trial. **Messersmith**, 860 A.2d at 1085 **See, e.g., Orndoff**, 760 A.2d at 3-4 (finding no error where the allegedly extraneous information given to the jury by a juror was contained in evidence presented at trial; thus it was not new information). Similarly, Juror Ten's statements did not offer any new information to the jury regarding Victim's actual body language-she was giving her opinion based upon her observations and personal experience-which she was permitted to do pursuant to the jury instructions. Finally, the trial court found that the third

*Messersmith* prong was not satisfied because Appellant failed to present any evidence that Juror Ten's statements were emotional or inflammatory. *Id*. at 5.

Following our own careful review of the testimony presented by Jurors Four, Six, and Eleven, we find that the trial court did not abuse its discretion when it denied Appellant's motion for a new trial on the grounds that Juror Ten provided prejudicial extrinsic evidence to the jury.[3]

In his second issue, Appellant argues that the trial court erred when it denied him a new trial because the verdict was contrary to the weight of the evidence. Appellant's Brief at 46. Appellant further avers that the Commonwealth failed to meet its burden of proving that Appellant knew Victim did not consent or that Appellant disregarded a substantial risk that Victim did not consent to their encounter. *Id*. at 50 (citing *Commonwealth v. Carter*, 418 A.2d 537 (Pa. Super. 1980)). Appellant also asserts that the testimony of Victim was unreliable and untrustworthy and that the Commonwealth's evidence showed that Victim "wasn't certain of her own feelings and intentions with respect to [Appellant]." Appellant's Brief at 50. Appellant posits that Victim's actions following the alleged assault "were as consistent with those

---

[3] To the extent Appellant argues that Juror Ten's opinion regarding Victim's body language constituted an expert opinion, we reject that argument. As discussed above, Juror Ten provided her opinion based upon her personal life experience, as she was instructed to do by the trial court. This does not constitute expert testimony. *See* Pa.R.E. 702.

of a victim of nonconsensual sex," as with someone who felt guilt, shame and regret "for allowing things to go as far as they did, and who realized that being with a [replacement for her ex-paramour] only resulted in her feeling worse about herself." *Id*. at 54.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
>> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. **Brown**,* 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. **Commonwealth v. Farquharson**, 467 Pa. 50, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis in original) (quoting **Commonwealth v. Widmer**, 744 A.2d 745, 753 (Pa. 2000)). The **Clay** Court further described the trial court's discretion as follows:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of

judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Clay*, 64 A.3d at 1055 (quoting *Widmer*, 744 A.2d at 753).

In its opinion, the trial court noted, pursuant to standard criminal jury instruction 4.13(B), that

the testimony of the victim standing alone, if believed, is sufficient proof upon which to find the defendant guilty in this case. The testimony of the victim in a case such as this need not be supported by other evidence to sustain a conviction. Thus a juror may find the defendant guilty if the testimony of the victim convinces him or her beyond a reasonable doubt that the defendant is guilty.

Trial Court Opinion, 1/4/18, at 7 (quoting **PA-JICRIM** 4.13(B) (2016)). The court further noted that the jury's decision in the instant case turned on the credibility of Victim and Appellant, both of whom provided testimony regarding the incident, and whether the encounter was consensual. Trial Court Opinion, 1/4/18, at 7. Ultimately, the trial court found that because the testimony of Victim was sufficient for the jury to rely on to sustain the conviction, if they found her testimony credible, the verdict was not against the weight of the evidence. *Id*. at 8. Indeed, "this Court has long-recognized that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary testimony from defense witnesses." *Commonwealth v. Charlton*, 902 A.2d 554, 562 (Pa. Super. 2006); *see also Commonwealth v. Gonzalez*, 109 A.3d 711, 721 (Pa. Super. 2015) (It is well established that "[t]he victim's uncorroborated

testimony is sufficient to support a rape conviction."). Here, the jury found Victim's testimony to be credible and chose not to believe Appellant's version of the events. "It was within the province of the jury, as fact-finder, to resolve all issues of credibility, resolve conflicts in evidence, make reasonable inferences from the evidence, believe all, none, or some of the evidence, and ultimately adjudge appellant guilty." **Charlton**, 902 A.2d at 562. Given the above, the trial court did not err in its exercise of discretion when it found that Appellant's conviction was not against the weight of the evidence.

In his final issue, which is separated into two parts, Appellant avers that the trial court erred when it imposed an illegal sentence because it required him to register as a sexual offender for a period of fifteen years under SORNA/Act 10.[4] In support of the first part, Appellant argues that his fifteen-

---

[4] 42 Pa.C.S. §§ 9799.10, *et seq*. This Court provided the following brief history of SORNA/Act 10 in **Commonwealth v. Reslink**, __A.3d__, 2020 PA Super. 289, n.8 (Pa. Super. filed December 18, 2020):

> SORNA was originally enacted on December 20, 2011, effective December 20, 2012. **See** Act of Dec. 20, 2011, P.L. 446, No. 111, § 12, effective in one year or Dec. 20, 2012 (Act 11 of 2011). Act 11 was amended on July 5, 2012, also effective December 20, 2012, **see** Act of July 5, 2012, P.L. 880, No. 91, effective Dec. 20, 2012 (Act 91 of 2012), and amended on February 21, 2018, effective immediately, known as Act 10 of 2018, **see** Act of Feb. 21, 2018, P.L. 27, No. 10, §§ 1-20, effective Feb. 21, 2018 (Act 10 of 2018), and, lastly, reenacted and amended on June 12, 2018, P.L. 140, No. 29, §§ 1-23, effective June 12, 2018 (Act 29 of 2018). Acts 10 and 29 of 2018 are generally referred to collectively as SORNA II. Through Act 10, as amended in Act 29 (collectively, SORNA II), the General Assembly split SORNA I's

year registration requirement constitutes a direct criminal punishment, in violation of **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017). Appellant's Brief at 58. Appellant posits that at most, his registration period must be limited to less than two years, the lawful maximum sentence for his conviction. Appellant's Brief at 61. In the second part, Appellant argues that the requirements under SORNA/Act 10 infringe on his protected right to reputation without due process of law. **Id**. at 65. Appellant further avers that the registration requirement constitutes cruel and unusual punishment. **Id**. at 69.

Appellant first argues that the trial court erred when it imposed an illegal sentence upon him. Appellant's Brief at 58. Specifically, Appellant argues that according to **Muniz**, SORNA/Act 10 constitutes direct criminal punishment; thus, the fifteen-year registration requirement exceeds the maximum punishment for his offense, a second degree misdemeanor, which shall not be more than two years of imprisonment. Appellant's Brief at 58 (citing 18 Pa.C.S. §§ 1104(2), 3126(a)(1)). Appellant further asserts that although the legislature made changes to SORNA/Act 10 in response to

_____

former Subchapter H into a Revised Subchapter H and Subchapter I. Subchapter I addresses sexual offenders who committed an offense on or after April 22, 1996, but before December 20, 2012. **See** 42 Pa.C.S.A. §§ 9799.51-9799.75. Subchapter I contains less stringent reporting requirements than Revised Subchapter H, which applies to offenders who committed an offense on or after December 20, 2012. **See** 42 Pa.C.S.A. §§ 9799.10-9799.42.

*Muniz*, there is "little daylight between the two schemes," and given that SORNA/Act 10 does not meaningfully alter those requirements, it should be viewed as punishment and not a collateral criminal consequence. Appellant's Brief at 61. Because the maximum sentence for Appellant's conviction was two years of imprisonment, Appellant argues that the longest he lawfully could have been required to register is two years. *Id*.

As Appellant acknowledges, this Court reviewed a similar challenge in *Commonwealth v. Strafford*, 194 A.3d 168 (Pa. Super. 2018). In that case, the appellant was convicted of Indecent Assault of a Person less than 13 years of age, Corruption of a Minor, and Involuntary Deviate Sexual Intercourse with a Child. *Id*. at 171. The appellant was classified as a Tier III offender, which required lifetime registration as a sex offender. *Id*. On appeal, the appellant argued that the lifetime registration requirement exceeded the statutory maximum sentences applicable to his convictions. *Id*. at 172. This Court rejected the appellant's argument, finding that although terms of incarceration and probation may not exceed the maximum allowable terms, "most sentencing alternatives are not tied to the maximum authorized term of incarcerations." *Id*. at 172–173. We then analogized the registration requirements under SORNA/Act 10 to the sentencing alternatives of fines and restitution, as authorized by 18 Pa.C.S. § 1101 (relating to fines) and 18 Pa.C.S. § 1106 (relating to restitution). *Strafford*, 194 A.3d at 173. Specifically, we found as follows,

In SORNA the legislature authorized courts to include periods of registration as part of a sentence. Similar to the treatment of the payment of fines or restitution, the legislature did not tie the period of registration to the length of incarceration. *See* 42 Pa.C.S. § 9799.14 ("Sexual offenses and tier system"); 42 Pa.C.S. § 9799.15 ("Period of registration"). SORNA's registration provisions are not constrained by Section 1103[, relating to maximum terms of imprisonment for felony convictions]. Rather, SORNA's registration requirements are an authorized punitive measure separate and apart from Appellant's term of incarceration. The legislature did not limit the authority of a court to impose registration requirement only within the maximum allowable term of incarceration; in fact, that legislature mandated the opposite and required court to impose registration requirements in excess of the maximum allowable terms of incarceration.

**Strafford**, 194 A.3d at 173. Ultimately, we held, "Appellant's lifetime registration requirement authorized by SORNA does not constitute an illegal sentence." **Id**. It is well-settled that "[t]his Court is bound by existing precedent under the doctrine of *stare decisis* and continues to follow controlling precedent as long as the decision has not been overturned by our Supreme Court." **Commonwealth v. Reed**, 107 A.3d 137, 143 (Pa. Super. 2014). This reasoning is on point and defeats Appellant's argument.

Appellant also argues for the first time on appeal that SORNA/Act 10 is unconstitutional because it infringes on his protected right to reputation without due process of law. Appellant's Brief at 65. Specifically, Appellant asserts that SORNA/Act 10's registration requirements are "premised on the presumption that all sexual offenders pose a high risk of recidivating, impinge upon that fundamental right." **Id**. Appellant further avers that the irrefutable premise violates due process when "the presumption is deemed not

universally true and reasonable alternative means of ascertaining that presumed fact are available." *Id*. (quoting *In re J.B.*, 107 A.3d 1, 14-15 (Pa. 2014)). Appellant then lists research alleging that the presumption of dangerousness of sex offenders is not universally true and cites to evidence that allegedly confirms that most convicted offenders pose little risk and abide by standards of conduct. Appellant's Brief at 66.

This Court recently reviewed a similar constitutional challenge to Subchapter H of SORNA/Act 10. *See Reslink*, 2020 PA Super. 289. In *Reslink*, the appellant was convicted of two counts of indecent assault-person less than 13 years of age. The appellant was classified as a Tier III offender, but was not found to be a sexually violent predator. *Id*. at *1. In that case, the appellant did not file a post-sentence motion. *Id*. On appeal, he raised a challenge to the constitutionality of Subchapter H of SORNA/Act 10 on the grounds that it "creates 'an irrefutable presumption against the offender,'" and violates "federal and state constitutional prohibitions against cruel and unusual punishment." *Id*. at *3. This Court found that the appellant waived the issue because he failed to raise it "before the trial court, in a motion to bar application of SORNA, or in post-sentence motions." *Id*. at *4. In reaching that decision, we noted that it "is well-settled that issues not raised

before the trial court cannot be advanced for the first time on appeal."[5]  *Id*. (citing Pa.R.A.P. 302(a)).  The fact that the appellant raised a constitutional claim did not alter this Court's analysis.  *See id.* (citing *In re F.C. III*, 2 A.3d 1201, 1212 (Pa. 2010)) (finding appellant's constitutional claims waived where he failed to raise them before the trial court, depriving that tribunal of the opportunity to consider and rule on them); *see also Commonwealth v. Howe*, 842 A.2d 436, 441 (Pa. Super. 2004) ("[C]onstitutional issues, including sentencing issues based upon the constitution, are waived if they are not properly raised in the trial court.").

Appellant failed to raise his constitutional challenges to SORNA/Act 10 before the trial court; thus, we are constrained to find he has waived those claims.

Judgment of sentence affirmed.

Judge Strassburger joins the Memorandum.

Judge Bowes files a Concurring Memorandum.

---

[5] A challenge to the constitutionality of a sentence must be properly raised before the trial court, in a post-sentence motion, or in the instant context, a motion to bar application of SORNA/Act 10, or else that issue is waived. *Reslink*, 2020 Pa. Super. 289, *4.  In contrast, a challenge to the legality of sentence cannot be waived, may be raised *sua sponte* by the court, and must be vacated.  *Commonwealth v. Randall*, 837 A.2d 1211, 1214 (Pa. Super. 2003).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/13/2021